**Max J. FLETCHER, Plaintiff–Appellant,**

v.

**RICKS EXPLORATION, and S.J. & R. Corporation, Defendants–Appellees.**

No. 89–6006.

United States Court of Appeals,
Fifth Circuit.

July 17, 1990.

---

M. Keith Dollahite, Randall L. Roberts, Potter, Guinn, Minton, Roberts & Davis, Tyler, Tex., for plaintiff-appellant.

Harlan P. Abright, Schofield & Abright, Murl E. Smith, Ireland, Carroll & Kelley, Tyler, Tex., for defendants-appellees.

Before GOLDBERG, GEE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

*Facts and Prior Proceedings:*

In October 1983, Ricks Exploration Company completed the Jenkins 272–A gas well. The well was shut-in until November 1984, when pipeline construction was completed and markets were obtained.

In December 1983, Max Fletcher obtained a lease covering an undivided one-fourth interest in the oil, gas, and other minerals under a 100 acre tract in Rains County, Texas. This lease terminated, but was renewed in March 1985.

Larry Fenity, an agent of Ricks Exploration, contacted Max Fletcher about the possibility that Ricks Exploration might buy Fletcher's oil and gas lease on the Rains County tract. Fletcher expressed interest in the sale and Fenity told Fletcher that he would get back to him. Neither Fenity nor any other representative of Ricks Exploration contacted Fletcher again.

In January 1985, Ricks Exploration, as operator, and Deep Gas Exploration, Inc., Prairie Producing Co., McMoRan Exploration Co., Prairie Ginger Co., Trend Resources Limited, and Exxon Corp., as working interest owners, entered into an operating agreement for the Jenkins 272–A well. Together, Ricks Exploration and S.J. & R. Corp. own oil and gas leases covering an undivided one-half interest in a 29.675 acre tract within the same 100 acre tract on which Fletcher has his lease. Fletcher is not a party to the operating agreement and, further, neither he nor his lawyer knew of its existence until after this suit was filed.

In February 1985, Ricks Exploration, Deep Gas Exploration, Inc., and S.J. & R. Corp. executed and filed a unit designation for the Jenkins 272–A well. The unit designation created a 259.47 acre unit, which included the 29.675 acres leased one-half to Ricks Exploration and S.J. & R. and one-fourth to Fletcher. The unit designation pooled, combined and unitized the royalties, working interests, overriding royalties, production payments, and other interests pertaining to the leases and unit acreage for the drilling, development, and production of oil, gas, condensate, sulphur, and other minerals from the acreage within the designated unit.

The unit designation provides: "[t]his agreement may be executed in multiple counterparts, or by ratification instruments, with the same effect as if all parties executed the same instrument." In March 1985, Prairie Producing Company, Prairie Ginger Company, and McMoRan Exploration Company filed ratifications of the Jenkins 272–A No. 1 Unit; Trend Resources Limited filed a Designation of Pooled Unit. (Ricks Exploration, Deep Gas Exploration, Inc., and S.J. & R. Corp. were, by virtue of being parties to the original unit designation, already "in").

In June 1985, Fletcher's lawyer wrote to Ricks Exploration, advising Ricks that Fletcher "elects to participate in the Unit as designated and here now tenders to you his pro rata share of the drilling and completion cost of the Unit well." Thereafter, Fletcher's lawyer met with Larry Fenity and discussed the inclusion of Fletcher's leased acreage in the Jenkins 272–A No. 1 Unit. The discussions were inconclusive. Ricks Exploration neither agreed, nor refused, to permit Fletcher to ratify the unit designation. In August 1985, Fletcher executed and recorded his ratification of the unit designation.

During the period between 1984 and 1986, the gas well produced almost 3 million MCF of gas. The Texas Railroad Commission has determined that the 29.675 acre tract itself is nonproductive as to gas and other products from the unitized well. Ricks Exploration and S.J. & R. Corp. have,

however, always taken their pro rata part of the production allocated under the unit designation to the 29.675 acre tract. Fletcher has received nothing and Ricks Exploration and S.J. & R. Corp. have refused to account to him for any of the production from the well.

In May 1986, Fletcher filed suit against Ricks Exploration and S.J. & R. Corp., claiming a right to participate in the Jenkins 272–A gas well. Ricks Exploration and S.J. & R. Corp. denied Fletcher's right to participate and moved to dismiss Fletcher's complaint for failure to join indispensable parties. Thereafter, Prairie Producing Company, Prairie Ginger Company, McMoRan Exploration and Trend Resources Limited settled with Fletcher, agreeing to pay him a total of $120,846.00 and rendering moot the motion to dismiss. Ratex Resources, formerly Deep Gas Exploration, also settled.[1]

The parties then agreed to submit the case to the court on stipulated facts,[2] essentially as set forth above. The district court reviewed the stipulated facts and held: 1) that the unit designation did not constitute an offer to Max Fletcher to participate in production from the gas well and 2) that Texas law would not "allow ratification of a pooling provision by the owner of an unproductive working interest." The court entered a final judgment that Max Fletcher take nothing. Fletcher appeals.

## Discussion

This is, in part, a case of first impression under Texas law. As to the district court's holding that there was no offer, general principles of contract law apply and we find no error in the district court's disposition of that issue. Whether Fletcher's ratification was valid, effective and/or permissible, however, is an open question. After a careful review of the Texas law, we determine that Fletcher is without a remedy in either law or equity.

### 1. Offer and Acceptance

 Fletcher contends that "the unit designation constituted an offer to other owners of interests in the defined unit acreage to ratify the unit designation and participate in the unit." He argues that the district court erred when it held that the unit designation was not an offer because its terms failed to meet the test of reasonable definiteness. Fletcher relies on § 2.204(c) of the Tex.Bus. & Com.Code (Uniform Commercial Code) for the proposition that a contract does not fail for indefiniteness. Fletcher's reliance is misplaced. Though it is true that a contract for the sale of natural gas is a contract for the sale of goods under the U.C.C., we do not here have such a contract. The contract to which Fletcher wishes to make himself a party is not a sales contract, it is a "drilling" contract. The district court did not err in failing to apply to U.C.C. or in holding that there was no offer.

 Fletcher further argues that the offer was extended to him by virtue of the inclusion of his 29.675 acre tract in the unit designation, accompanied by the filing of that unit designation. Fletcher makes much of the fact that, along with him, neither Prairie Producing Co., Prairie Ginger Co., Trend Resources Limited, nor McMoRan Exploration Co., were named as parties in the unit designation. We decline to hold that the mere preparation and filing of a unit designation constitutes an offer to all persons who hold leases on land within the designated acreage to join in the unit. Neither the law of contract nor Texas oil and gas law supports such a result. And, while it is true that along with Fletcher none of the four companies named above were named in the unit designation, the fact remains that those four companies were contacted directly by Ricks Explora-

---

1. We point out that the settlement by the other working interest owners is not probative of the merits of Fletcher's claim here.

2. The parties even stipulated as to the amount of Fletcher's damages should he prevail:

$$1/4 \times 29.675/259.478 = 2.859105\%$$ participation inclusive of royalty obligations.

tion and were parties to the operating agreement. Fletcher simply was not, and he does not stand in their shoes.

Fletcher continues, that through his ratification he clearly accepted the offer. Without an offer, there can be no acceptance. Fletcher cannot make himself a party to a contract by accepting an offer that was not extended to him, regardless of the propriety of the manner and means of his acceptance.

The district court did not err in holding that there was no offer. That being so, there was no contract and there was no breach.

## 2. *Equity*

As Fletcher tells us, he did not seek an equitable remedy in the district court. That being so, he cannot seek one here. Nevertheless, because Ricks Exploration and S.J. & R. Corp. devote a substantial portion of their brief to "the equities," we address them, but only briefly.

 Fletcher, after noting that no Texas case has addressed the precise issue presented here, argues that the result he seeks is nevertheless supported by legal principles firmly established in Texas law. He then cites three cases standing for the proposition that a non-leasing *cotenant* has the right to ratify an oil and gas lease made by one or more of the remaining cotenants if the lease purports to bind the non-leasing cotenant's interest. Fletcher is correct. This principle of law is firmly established in Texas jurisprudence. It does not, however, provide support for Fletcher's position. Fletcher is not a cotenant and his position here is so different from that of a cotenant that the cases he cites are wholly inapposite.

The district court held that Texas law would not allow ratification of a pooling provision by the owner of an unproductive working interest. In doing so, it declined to extend the reasoning of the "cotenant" cases to cases involving "co-lessees" and refused to create a remedy heretofore unrecognized in the laws of Texas (or, perhaps, the laws of any other state, as a want of authority in the briefs indicates). The

district court was correct. There is no reason to believe that the Texas Supreme Court would decide the issue any other way. The parties give us none, and we have found none.

Finally, Fletcher does have (or, at any rate, had) other remedies available, ranging from self help—he could drill his own well—to proceeding under the Mineral Interest Pooling Act.

Simply stated, Fletcher wants something for what may have once appeared to be something but is now known to be nothing. We cannot oblige him. The judgment of the district court is

AFFIRMED.