**NEW BREMEN CORPORATION,**
**Plaintiff,**

v.

**COLUMBIA GAS TRANSMISSION COR-**
**PORATION and Columbia Gulf Trans-**
**mission Company, Defendants.**

**Civil A. No. H–89–0072.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 11, 1995.

Joe H. Reynolds, Andrews & Kurth, Houston, TX, and James J. Reed, Jr., Looper Reed Mark & McGraw, Houston, TX, for New Bremen Corp.

Thomas Henry Lee, Clements O'Neill Pierce & Nickens, L.L.P., Houston, TX, for Columbia Gas Transmission and Columbia Gulf Transmission.

Guy Stanford Lipe and J. Harrell Feldt, Vinson & Elkins, Houston, TX, for Mobil Producing Texas, Mobil Natural Gas, and Mobil Exploration.

## ORDER

RAINEY, District Judge.

■ Before the Court are Defendant Columbia Gas Transmission Corporation's Motion for Partial Summary Judgment (Docket entry # 87), Defendant Columbia Gulf Transmission Company's Motion for Partial Summary Judgment (Dkt. # 119), and Plaintiff's Motion for Partial Summary Judgment. (Dkt. # 120). Columbia Gulf Transmission Company has been dismissed as a defendant, *see* Dkt. nos. 150, 151, 166, and therefore its motion (Dkt. # 119) is MOOT. At issue is the interpretation of the pricing provisions of five essentially identical natural gas Purchase and Sale Agreements.[1] After reviewing the motions, all responses and replies, the remainder of the record, and the applicable law, the Court is of the opinion that the summary judgment motion of Defendant Columbia Gas Transmission ("Columbia") (Dkt. # 87) should be GRANTED and that Plaintiff's Motion for Summary Judgment (Dkt. # 120) should be DENIED.

### I. The Contracts

Each of the contracts at issue contains an essentially identical set of pricing provisions for deregulated gas.[2] Under section 3.1.1(i) of each contract (hereafter, the "escalation clause"), the price for deregulated gas is set at $5.35 per MMBtu, subject to monthly adjustments based on the Consumer Price Index published by the United States Department of Labor. Under section 3.1.1(ii) of each contract (hereafter, the "redetermination clause"), the Seller has the option, on a quarterly basis, of requesting a determination of an alternate price which will remain in effect until the Seller requests another redetermination in a subsequent quarter. Under the redetermination clause, the Seller may select from any of four methods for determining the price the Buyer will pay by giving the Buyer notice fifteen days before the beginning of any calendar quarter. The four optional prices are: (1) the price set according to the escalation clause, (2) the price per MMBtu equivalent to one hundred ten percent (110%) of the price per MMBtu of No. 2 Fuel Oil, (3) the arithmetic average of the three highest prices paid by interstate pipeline companies to unaffiliated gas producers for deregulated gas produced in Texas and delivered in the previous quarter, and (4) the arithmetic average of the highest price per MMBtu paid in the last month of the preceding calendar quarter for Mexican and Canadian gas.

Notwithstanding the escalation and redetermination clauses of section 3.1.1, section 3.1.2 specifies a ceiling on the price per MMBtu that the Buyer can be required to pay. Three and one-half years after the contracts enter into effect, section 3.1.3 (hereafter, the "market-out clause") provides for periodic renegotiation of the price per MMBtu of natural gas at the option of either the Buyer or the Seller.[3] However, market-

---

1. It is by now settled that a natural gas purchase and sale agreement is a contract for the sale of "goods," as that term is defined in article 2–105(1) of the Uniform Commercial Code. *See* Tex.Bus. & Com.Code Ann. § 2.105(a) (Vernon 1994); *Fletcher v. Ricks Exploration Co.,* 905 F.2d 890, 892 (5th Cir.1990); *Howell Crude Oil Co. v. Tana Oil & Gas Corp.,* 860 S.W.2d 634, 637 (Tex.App.—Corpus Christi 1993, no writ).

2. For the full text of pricing clauses contained in some other contracts between Columbia and an entity called New Ulm Gas, Ltd., *see Columbia*

*Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 886 S.W.2d 294, 296–98 (Tex.App.—Houston [1st Dist.] 1994, writ requested). There is no material difference between the New Ulm clauses and the New Bremen Clauses.

3. "Market-out" contracts are common in the natural gas industry, but not all "market-out" clauses are the same. For examples of other market-out clauses, *see, e.g., Exxon Corp. v. Crosby–Mississippi Resources, Ltd.,* 40 F.3d 1474, 1479–80 (5th Cir.1995); *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1217–

out renegotiation is only available if the requesting party can "demonstrate in good faith that the price being paid does not reflect the market value of the gas being sold in the area where it is produced or the market value of the gas in the area where it is being consumed." Section 3.1.3 provides:

At any time after December 31, 1984 and from time to time thereafter, either Buyer or Seller may request the renegotiation of price to be paid for the gas sold and delivered hereunder, in which case the party making such request must demonstrate in good faith that the price being paid does not reflect the market value of the gas being sold in the area where it is produced or the market value of the gas in the area where it is being consumed. In such case the parties shall review the circumstances and supporting data in a good faith effort to rectify the situation by mutually agreeing to a new price or Seller may seek a third party purchaser for the gas. In the event that a bona fide offer is received by Seller from a third party purchaser, Buyer shall have the option either to match such offer and continue to purchase the gas hereunder or to release the gas at issue. If no bona fide third party purchaser offer is received, then the parties hereto shall try for thirty (30) days to negotiate an acceptable price. If the parties fail to agree on a price, the matter will be referred to arbitration as provided in Section 17 hereunder. During the period of any negotiations or arbitration the gas will continue to be sold and purchased at the price in effect at the time of the notice.

In other words, the "market-out" clause specifies the procedures the parties will follow on or after January 1, 1985 to readjust the price per MMBtu of gas periodically to reflect market conditions. The market-out clause does not provide any particular benchmark for the measurement of the market price of deregulated gas. Nor does the market-out clause specify any particular terms which must, or which may not, be included in any agreement reached at the conclusion of a market-out renegotiation or arbitration. The market-out procedure is evidently optional; neither party was ever *required* to invoke the procedure on or after January 1, 1985.

## II. The Dispute

Plaintiff New Bremen was not originally a party to any of the contracts. Rather, New Bremen acquired the contract rights by assignment on November 30, 1987. On that date, New Bremen acquired the working interest ownership of the underlying oil and gas leases from Mobil Producing Texas and New Mexico, Inc., and Amerada Hess Corporation. In conjunction with this acquisition, New Bremen became the assignee of the rights of Mobil and Amerada under the Purchase and Sale Agreements.

Needless to say, the price of natural gas did not keep pace with inflation in the period between 1980 and 1987. *See* note 3, *supra.* By the time New Bremen became the assignee of the contract rights, New Bremen's predecessors-in-interest and Columbia had renegotiated the price of gas in accordance with the "market-out" procedures. Nevertheless, on December 31, 1987, New Bremen notified Columbia that it intended to select the escalation clause price for gas sold in the subsequent quarter in accordance with the redetermination clause.[4] Columbia responded that New Bremen could request another round of market-out renegotiation, but that invocation of the redetermination clause was no longer available because the price in effect at the time was the product of the market-out procedure under section 3.1.3 of the con-

---

19 (5th Cir.1990); *Manchester Pipeline Corp. v. Peoples Natural Gas Co.*, 862 F.2d 1439, 1441 & n. 1, 1447–49 (10th Cir.1988). The failure of certain natural gas pipeline companies to include "market-out" provisions in their take-or-pay contracts in anticipation of the effects of natural gas deregulation in the early 1980s has been a source of considerable litigation in subsequent years. *See, e.g., State of Illinois ex rel. Burris v. Panhandle Eastern Co.*, 935 F.2d 1469, 1472–74 (7th Cir.1991).

4. The Court observes in passing that, even if pricing under the redetermination and escalation clauses were available to New Bremen, this notice would not necessarily comply with the requirement that the Seller provide notice of any redetermination at least fifteen days in advance of the first day of the *calendar* quarter.

tracts. New Bremen subsequently notified Columbia that it intended to invoke the redetermination clause on March 30, 1988, September 14, 1988, March 15, 1989, June 15, 1989, September 15, 1989, and December 18, 1989.

Each party contends its interpretation of the contract is correct as a matter of law. New Bremen's position is that the redetermination clause continues in effect after the invocation of the "market-out" procedure, effectively permitting the Seller to set the price per MMBtu of natural gas at inflation-adjusted 1980 prices each and every quarter. Under this interpretation, the Buyer, upon receipt of a redetermination notice from the Seller, has fifteen days to respond by invoking the "market-out" procedure again or the escalated 1980 price will become effective with the new quarter and remain in effect until the conclusion of the market-out procedure. Assuming that the market-out procedure—including a third-party bidding process, a month of negotiation, and an arbitration—concludes within a calendar quarter,[5] New Bremen contends that the redetermination clause permits it to initiate the process again at the conclusion of the quarter and to continue to do so for the term of the contract. In other words, New Bremen argues it retains, for the duration of the contract, the right to notify the Buyer fifteen days prior to the end of each quarter that it intends to redetermine the price per MMBtu of natural gas at escalated 1980 prices, and that the Buyer must bear the risk of paying this price for the duration of the market-out procedure if for any reason the Buyer does not timely invoke the market-out clause.

Columbia, on the other hand, contends that the redetermination clause continues in effect for an indefinite duration, but only until such time as a market-out procedure is completed for the first time. According to Columbia, the price[6] set at the conclusion of a market-out procedure then becomes "the price in effect at the time of the notice," the next time one party or the other "from time to time" invokes a market-out procedure.

### III. Summary Judgment Standard

▉ Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant is a defendant, its burden is not to produce evidence showing the absence of a genuine issue of material fact. *See id.* at 323–28, 106 S.Ct. at 2553–54. A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case. *Id.,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Duffy v. Leading Edge Prods., Inc.,* 44 F.3d 308, 312 (5th Cir.1995); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 712 (5th Cir.1994).

▉ If the movant satisfies this *prima facie* burden, the burden shifts to the nonmovant, who must "set forth facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

5. Market-out procedures may, but will not necessarily, conclude within ninety days. The contractual deadlines for arbitration alone can potentially extend well beyond ninety days.

6. The language of the market-out clause certainly does not prohibit the Buyer and Seller from renegotiating a complete *pricing mechanism,* including pricing benchmarks or escalation terms.

For example, New Bremen and Columbia conducted an arbitration in 1989, in which the arbitrators' award of November 10, 1989 pegged the price of gas at "the price for Texas Gulf Coast Onshore Interstate Wellhead production as set forth from month to month in the publication, *Natural Gas Week,* for each monthly gas price report, as reported in that publication."

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Duffy*, 44 F.3d at 312. The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. at 1356. When the record taken as a whole cannot "lead a rational trier of fact to find for the non-moving party," there "is no genuine issue for trial." *Id.*

■ The standard for summary judgment "mirrors the standard for a [motion for judgment as a matter of law][7] under Federal Rule of Civil Procedure 50(a)." *Id.* at 250, 106 S.Ct. at 2511; *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *National Ass'n of Gov't Employees*, 40 F.3d at 713; *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994). Summary judgment is appropriate if "under the governing law, there can be but one reasonable conclusion as to the verdict;" if "reasonable minds could differ as to the import of the evidence," however, summary judgment should not be granted. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.

### IV. Standards of Contract Interpretation

■ The interpretation of an unambiguous contract is a question of law for the Court to decide. *Exxon Corp. v. Crosby–Mississippi Resources, Ltd.*, 40 F.3d 1474, 1481 (5th Cir.1995); *In re Haber Oil Co. (Haber Oil Co. v. Swinehart)*, 12 F.3d 426, 443 (5th Cir.1994). If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520. If, however, a contract is *reasonably* susceptible to more than one meaning, it is ambiguous and resolution of the ambiguity must be left to the jury. *Id.* (emphasis added) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)).

■ The initial determination that a contract is ambiguous and that its interpretation requires the consideration of extrinsic evidence is a legal conclusion. *Exxon Corp.*, 40 F.3d at 1481; *In re Haber Oil Co.*, 12 F.3d at 443; *see also National Union Fire Ins. Co.*, 907 S.W.2d at 520 (distinguishing between latent and patent ambiguities, but forbidding consideration of parol evidence of the parties' intent unless one or the other form of ambiguity is present). Parol evidence is not admissible for the purpose of *creating* an ambiguity, but only for the purpose of resolving ambiguities in a written contract. *Id.* The Court is bound to read all parts of a contract together to ascertain the agreement of the parties. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). Each part of the contract should be given effect. *Id.*

■ When, as in this case, the contract is one for the sale of goods, the terms of the contract "may be explained or supplement-

---

7. Fed.R.Civ.P. 50(a) and (b) were amended, effective Dec. 1, 1991, to create a single motion for "judgment as a matter of law," available to the parties conducting a jury trial, which if denied, the moving party may renew after trial. Prior to the amendment, a Rule 50(a) preverdict motion was termed a motion for "directed verdict," while a postverdict motion was termed a motion for "judgment notwithstanding the verdict." The change in the rule has not altered the substantive standard that governs whether a party to a jury trial is entitled to judgment as a matter of law—the nonmovant must "ha[ve] been fully heard on an issue," and there must be "no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmovant] on that issue." Fed.R.Civ.P. 50(a) & advisory committee's 1991 note ("The term 'judgment as a matter of law' is an almost equally familiar term and appears in the text of Rule 56; its use in Rule 50 calls attention to the relationship between the two rules.... It effects no change in the governing standard.").

ed," without regard to the question of ambiguity, "(1) by course of dealing or usage of trade . . . or by course of performance; and (2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." TEX.BUS. & COM.CODE ANN. § 2.202.

### V. Interpretation of the Contracts

██ A disagreement over the proper interpretation of a contract does not an ambiguity make. Only if the contract is susceptible to multiple *reasonable* interpretations is it necessary to conduct a factual inquiry into the parties' intent. As New Bremen points out, the interpretation it has proffered does not *necessarily* require Columbia to pay for gas at the rate specified in the escalation clause; hence, the difference between the two interpretations is not enormous.

██ Essentially, New Bremen's interpretation differs from Columbia's in three ways: (1) New Bremen's interpretation creates a perverse incentive for the Seller to invoke the redetermination clause on a quarterly basis in the hope that the Buyer will not request a market-out procedure in time to avert a temporary price hike, (2) New Bremen's interpretation is more costly for both the Buyer and the Seller to the extent that this perverse incentive results in more frequent renegotiation of gas prices than would occur were Columbia correct, and (3) New Bremen's interpretation *assumes* that the Buyer can always invoke the market-out procedure in response to a redetermination notice. This third feature of New Bremen's interpretation is not clearly consistent with the plain and literal language of the market-out clause, which requires as a prerequisite to a market-out procedure that "the party making such request must demonstrate in good faith that the price *being paid* does not reflect the market value of the gas being sold in the area where it is produced or the market value of the gas in the area where it is being consumed." New Bremen would have the Court read this provision as requiring a demonstration that the price *to be paid if and when Seller's notice of redetermination takes effect* does not reflect the market

value of the gas. To apply New Bremen's interpretation in a manner consistent with the literal language of the market-out clause would necessarily result in yo-yo pricing due to repeated invocation of the redetermination clause fifteen days prior to the end of any quarter in which a market-out procedure is successfully concluded.

Moreover, the state court in *Columbia Gas Transmission Corp. v. New Ulm Gas*, 886 S.W.2d 294, 298 (Tex.App.—Houston (1st Dist.) 1994), recognized that the interpretation New Bremen has adopted is also inconsistent with the literal language of the redetermination clause:

> Section 3.1.1(ii) states that "Seller may request a determination of an alternate price to be paid by Buyer hereunder to be effective on the first day of each calendar quarter and shall remain in effect thereafter until Seller requests a different alternate price." We note the language stating that the alternate price requested by the [S]eller "shall remain in effect thereafter until Seller requests a different alternate price." This language alone directly conflicts with section 3.1.3, which, by its own terms, may be used to set pricing "[a]t any time after December 31, 1984." If the alternate price selected by the seller under section 3.1.1 "shall remain in effect thereafter," then section 3.1.3 could never be used by the buyer, one of the two parties for whose benefit it was written.

*Id.*

Columbia's interpretation, in contrast, quite reasonably provides a mechanism available to either the Buyer or the Seller to renegotiate the price of gas whenever the price then being paid does not reflect the market value of the gas. It does not permit any party, at any time, to impose an artificially constructed nonmarket price for the purchase or sale of deregulated gas. Columbia's interpretation carries no potential for "yo-yo" pricing unless the deregulated gas market itself fluctuates wildly. Nor does Columbia's interpretation fail to read and harmonize the contract as a whole. The market-out provision does not necessarily terminate the effect of the escalation and redetermination clauses on or after January

1, 1985—it does so only upon the successful conclusion of the first market-out procedure invoked by one of the parties. Because the clause is entirely optional, Columbia's interpretation is in no way inconsistent with any language in sections 3.1.1 or 3.1.2 of any contract.

The Court is cognizant of the holding of a state court, now on appeal, in *New Ulm,* 886 S.W.2d at 298–99, that the same pricing provisions in virtually identical contracts are ambiguous. The *New Ulm* court emphasized the absence of express language addressing the continued effect of the escalation and redetermination clauses after the first market-out procedure is completed: "The contract does not state that pricing can no longer be determined under section 3.1.1 once section 3.1.3 is invoked; neither does it state to the contrary, that once section 3.1.3 is invoked, pricing can still be determined under section 3.1.1." *Id.* at 298. However, the absence of express language does not necessarily render the contract ambiguous with respect to this question.

The *New Ulm* court's decision that the contract is ambiguous fails to take into account the necessary result of any completed market-out procedure. Only four results are possible: (1) the Buyer releases a quantity of gas, which the Seller sells to a third party, according to the pricing mechanism and for the term the Seller has negotiated with the third party, (2) the Buyer exercises the option of purchasing gas according to the terms of a pricing mechanism the Seller has negotiated with a third party, *in lieu of* the pricing agreement previously in effect, (3) the Buyer and the Seller agree on a price or a pricing mechanism which takes the place of the pricing agreement previously in effect, or (4) in the event a third-party buyer cannot be found and the Buyer or Seller cannot agree, an arbitration panel imposes a price or pricing mechanism upon both parties. New Bremen certainly cannot argue in seriousness that the redetermination clause permits it to enter a purchase and sale agreement with a third party, perform until fifteen days prior to the subsequent calendar quarter, then reject that contract with impunity and instead require Columbia to pay the escalation clause price for the gas until the conclusion of the next market-out. Neither should the argument be taken seriously that a contractual modification of the article 3.1.1 pricing mechanism, agreed upon by the parties or imposed by a neutral arbitrator following a section 3.1.3 market-out procedure, is nevertheless subject to unilateral repudiation by the Seller because of terms included in the pre-modification pricing agreement. The reason that the original terms of section 3.1.1 are no longer available after the first time a market-out procedure is completed is that the conclusion of the market-out procedure operates as a contract modification that supplants the previous pricing mechanism until the conclusion of the next market-out procedure. *See* TEX.BUS. & COM.CODE ANN. § 2.209(a).

Finally, New Bremen refers to course of performance evidence in support of its argument. *See* TEX.BUS. & COM.CODE ANN. §§ 2.202, 2.208(a). Of course, the course of performance exhibited by New Bremen itself is irrelevant because New Bremen assumed performance under the contracts in 1987— long after market-out pricing had become established—and Columbia never acquiesced in or accepted the course of performance that New Bremen proposed. *Id.* § 2.208(a). The evidence concerning New Bremen's predecessors' courses of performance strongly supports Columbia's interpretation of the contracts. Although there was some disagreement concerning the meaning of the pricing provisions, all Sellers agreed to some form of market-out price or pricing mechanism before 1987. Nor is the Court persuaded by any of the regulatory proceedings that New Bremen has brought to its attention. There is only one reasonable interpretation of the contract clauses in question and New Bremen's interpretation is not it.

### VI. Conclusion

For the reasons stated above, the Court is of the opinion that Columbia's Motion for Partial Summary Judgment (Dkt. # 87) should be GRANTED, and that New Bremen's motion (Dkt. # 120) should be DENIED. It is so ORDERED.

The clerk shall enter this order and provide a true copy to all parties.