# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 19, 2013

No. 13-10154
Summary Calendar

Lyle W. Cayce
Clerk

VIRGINIA C. RODRIQUEZ,

       Plaintiff - Appellant

v.

WAL-MART STORES, INCORPORATED, doing business as Sam's Club,

       Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-2129

Before JONES, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

       Virginia C. Rodriquez ("Rodriquez") filed suit against her former employer, Wal-Mart Stores, Inc., d/b/a Sam's Club ("Sam's Club"), for discrimination based on age and national origin, and retaliation under the Texas Commission on Human Rights Act ("TCHRA"). The district court granted summary judgment in favor of Sam's Club. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10154

## I.  FACTS AND PROCEEDINGS

Virginia Rodriquez is a woman of Mexican descent over the age of forty. Rodriquez began working for Sam's Club in 1991 as an hourly associate in its Temple, TX store.  Sam's Club promoted Rodriquez several times during her years with the company.  In 2008, after Rodriquez had served approximately one year as assistant manager at the Temple location, the store manager, Jody Reed ("Reed"), promoted her to Operations Manager.  Rodriquez was forty-five years old at the time.

Two separate violations of company policies led to Rodriquez's termination in July 2010.  In 2009, Rodriquez violated Sam's Club's Associate Purchase Policy ("AP Policy").  The AP Policy, *inter alia*, governs the sale of Sam's Club products to managers and associates.  It states that a manager cannot authorize or reduce the price of an item she intends to purchase.  Similarly, the AP Policy prohibits a manager or associate from using "Code 2" to override an item transaction and establish a new price.

On October 8, 2009, Rodriquez decided to purchase perfume at the discounted priced of $37.  An associate scanned the perfume, but the register did not find the perfume or its price.  Rodriquez then instructed an associate, Genevieve Luna ("Luna"), to use the Code 2 override and price the perfume at $20.  Rodriquez also marked down another perfume for Luna to purchase. Another employee witnessed and reported Rodriquez's behavior.  After an investigation, Rodriquez admitted wrongdoing and accepted responsibility for the violation of AP Policy.  Rodriquez wrote after the incident: "I know this is a serious incident and I am fully responsible [for] taking the mark down on the perfume and telling the associate to ring it Code 2."

Sam's Club maintains a Coaching for Improvement Policy ("Coaching Policy") to handle disciplinary issues.  The Coaching Policy separates discipline into four levels of severity.  The levels of discipline are: (1) Verbal Coaching; (2) Written Coaching; (3) Decision Day; and (4) Termination.  A "Decision Day" is

2

the highest level of discipline short of termination. Each disciplinary level remains active for one year after the employee's infraction. Furthermore, the Coaching Policy classifies certain behavior as "Gross Misconduct" that justifies immediate termination.

The Human Resource Manager, Byron Lindemann, and his supervisor recommended that Sam's Club terminate Rodriquez for the violation. However, Reed advocated for Rodriquez to receive a second chance in light of her nearly twenty years at the company. As a result, Rodriquez received a Decision Day instead of termination. Sam's Club instructed her that another violation would result in termination.

The second violation of company policy occurred in July 2010. Loria Robertson ("Robertson"), a Sam's Club employee, hosted a party on July 4, 2010. Two Sam's Club cashiers called in sick to attend. Robertson posted photographs of the cashiers two days later on her Facebook page. Rodriquez viewed the party photographs and posted a comment on Facebook.

The Wal-Mart Social Media Policy prohibits any conduct that adversely affects job performance or other associates. While the Social Media Policy allows employees to post complaints online, the comments cannot appear "unprofessional, insulting, embarrassing, untrue, [or] harmful."

On July 6, 2010, Rodriquez publicly commented on Robertson's Facebook page:

> I hear that Caleb didn't show up for work on this day what's up with that???? He is partying with you guys?? WOW and Carrie tried to call in for him and knew about this . . . you guys are amazing and bold enough to post these [pictures] hahahahaha.

Rodriquez realized "the severity" of her comment and deleted it the same day. Nevertheless, Robertson complained to Sam's Club that Rodriquez posted the comment. Because Reed–manager of the Temple location–was on vacation, the Market Human Resource Manager, Lisa Richards ("Richards"), investigated the

complaint.

Richards concluded that the comment violated the Social Media Policy and determined that Rodriquez exhausted her disciplinary steps under the Coaching Policy and should be terminated. Richards waited until Reed returned from vacation and then terminated Rodriquez's employment. A thirty-nine year old Caucasian woman replaced her.

After her termination, Rodriquez filed a charge with the Texas Workforce Commission Civil Rights Division ("TWC") and the Equal Employment Opportunity Commission alleging retaliation and discrimination on the basis of age and national origin. The TWC dismissed, and Rodriquez brought the current action. The district court granted Sam's Club's motion for summary judgment on each claim and dismissed the suit. Specifically, the district court dismissed the discrimination claims because Rodriquez failed to show that Sam's Club's legitimate, nondiscriminatory reason for termination was merely a pretext. The district court dismissed Rodriquez's retaliation claim because, *inter alia*, she did not engage in a protected activity.

## II. STANDARD OF REVIEW

We review the grant of summary judgment de novo, applying the same standards as the district court. *Albemarle Corp. v. U.S. Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013). Summary judgment is appropriate when the evidence indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anadarko Petroleum Corp. v. Williams Alaska Petroleum, Inc.,* No. 12-20716, 2013 WL 4001507, at *2 (5th Cir. Aug. 6, 2013); FED. R. CIV. P. 56(a).

## III. DISCUSSION

On appeal, Rodriquez argues that the district court erred in granting Sam's Club's motion for summary judgment because genuine issues of material fact remained as to (1) whether the company discriminated based on her age and

national origin, and (2) whether the company retaliated against her.

A.     Age and National Origin Discrimination

Rodriquez raised two discrimination claims under the TCHRA.  Texas courts apply analogous federal law to claims under the TCHRA.  *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam) ("The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA.").  Either direct or circumstantial evidence can establish a claim of age and national origin discrimination.  *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  A plaintiff that fails to present direct evidence must rely upon the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012).

Initially, the plaintiff must establish a prima facie case of discrimination. *Id.*  Generally, a prima facie case requires the plaintiff to demonstrate that she was: (1) discharged; (2) qualified for the position; (3) in a protected class; and (4) replaced by someone outside the class.  *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).  If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action.  *Raggs*, 278 F.3d at 468.  However, the framework shifts only the burden of *production,* not the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  The employer need not persuade the court that the proffered reasons motivated it.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Rather, the employer must only present sufficient evidence to raise a genuine issue of material fact on whether it discriminated against the plaintiff.  *Id.*  If the employer presents such evidence, the burden returns to the plaintiff, who–to survive summary judgment–must establish that the employer's reason was either (1) a pretext for discrimination, or (2) only one of many reasons for the alleged conduct, and that

discrimination was a "motivating factor." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

The parties agree that Rodriquez has established a prima facie case of discrimination. First, Sam's Club terminated her employment on July 27, 2010. Second, Rodriquez was qualified for the position of manager because she was an employee of Sam's Club for nearly twenty years, with ten of those years in a managerial position. Third, Rodriquez is in a protected class because she is of Mexican origin and forty-seven years old. Fourth, an employee that is outside Rodriquez's protected class–a thirty-nine year old Caucasian woman–replaced her. Rodriquez thus satisfies the threshold requirement of presenting a prima facie case of discrimination.

Having shifted the burden to the employer, however, the district court correctly concluded that Sam's Club articulated a legitimate, nondiscriminatory reason to terminate Rodriquez. Rodriquez violated the AP Policy when she overrode the register to reduce the price of a perfume she purchased for herself. She committed the same violation for the cashier (Luna) that originally scanned the item. As a result of these violations, Rodriquez received a Decision Day, which under company policy is the final level of discipline prior to termination. Less than one year after her violations of AP Policy, Rodriquez made the posting on Robertson's Facebook page, which Richards determined violated Sam's Club's Social Media Policy. Because Rodriquez was on active Decision Day status for her previous AP violations and had been warned that any further misconduct would result in her termination, Richards terminated Rodriquez. Sam's Club thus carried its burden to produce a legitimate, nondiscriminatory reason to terminate Rodriquez, and our inquiry shifts to whether Rodriquez "create[d] a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . . or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id*. at 312 (internal marks

omitted).

Appellant contends that Sam's Club's proffered reason for her termination was a pretext for discrimination. In order to establish pretext, a plaintiff must present evidence showing either that she suffered disparate treatment or that the employer's proffered reason is false or "unworthy of credence." *Laxton*, 333 F.3d at 578.

Rodriquez fails to establish disparate treatment. To prove disparate treatment, a plaintiff must demonstrate that the employer gave preferential treatment to another employee under "nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). Employees that have different supervisors, different work responsibilities, or are subjected to adverse employment actions for dissimilar violations are not nearly identical. *Id*. at 260. A nearly identical circumstance exists where the employees have the "same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id*. (footnotes omitted).

Here, Rodriquez fails to demonstrate that another employee received preferential treatment under nearly identical circumstances. Rodriquez argues that Luna and the two cashiers who attended the party received preferential treatment. Her circumstance was not nearly identical to that of the other employees, as her job and responsibilities were dissimilar from the other employees'. Whereas Luna was a Cashier Operations Supervisor and the associates were cashiers, Rodriquez was the Operations Manager for the entire store and supervised the store's financials, budgets, human resources, compliance, and safety. Also, Rodriquez's violation was not similar to the other employees' actions. Whereas Rodriquez violated the Social Media Policy, the two cashiers improperly called in sick for work. Assuming, as Rodriquez suggests, that Luna should have been "disciplined for knowingly attending Robertson's July 4th party with two associates that she knew were scheduled to work that

day," her error is still entirely different from Rodriquez's violation of Sam's Club's Social Media Policy.  Finally, Rodriquez failed to provide evidence that the other employees had similar disciplinary histories.  She never alleged, for example, that the other employees were on active Decision Day status.

She also fails to demonstrate that Sam's Club's legitimate, nondiscriminatory reason for her termination is "false or unworthy of credence." An explanation is "false or unworthy of credence" if it is not the real reason for the termination.  *Laxton*, 333 F.3d at 578.  Courts do not consider whether the employer made an erroneous decision.  *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).  Rather, the employer needs only to terminate the employee based on a good-faith belief that her activity was improper.  *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993).

The only proper inquiry, then, is whether the employer made its decision with a discriminatory motive.  *Mayberry*, 55 F.3d at 1091.  An employee's subjective belief is insufficient to establish discriminatory motive.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").

Rodriquez fails to provide sufficient argument or evidence demonstrating that discriminatory motive–and not her prior disciplinary violations–was the real reason for her termination.  She attempts to establish pretext through comments made by Reed that disparaged Mexicans and African Americans. While the oral statements of an employer may be used as evidence of pretext, the evidentiary value of the statements depends upon their content and the speaker.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 & n.9 (5th Cir. 2000). A comment is sufficient evidence of discrimination only if it is: (1) related to the protected class; (2) proximate in time to the termination; (3) "made by an individual with authority over the employment decision at issue"; and (4) related to the termination at issue. *Haas v. ADVO Sys., Inc.,* 168 F.3d 732, 733 (5th Cir. 1999). Finally, "[c]omments that are 'vague and remote in time' are insufficient to establish discrimination." *Id.* (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).

Significantly, the "individual with authority over the employment decision at issue" is typically the person who executes the termination. *Russell*, 235 F.3d at 226. If this person is not the one who made the discriminatory comments, the employee must demonstrate that the individual that did make the comments influenced or leveraged his decision. *Id.* An employer is held liable for another's discriminatory comments only if she served merely as a "rubber stamp." *Id.* at 226-27.

Reed's alleged comments fail to establish pretext. Rodriquez claims that Reed once stated his sister was going to Mexico "to marry a wetback." She also claims that Reed told her "[y]ou know how black people are if they don't get there [sic] way," and that a black employee "would not make it as an outside salesperson because of the way she talked." Reed was not "the individual with authority" over the decision. Richards, rather than Reed, determined that Rodriquez should be terminated. As Rodriquez acknowledges, it was Richards who "approached Rodriques [sic] and told her someone had complained about the post" and who "asked Rodriques [sic] to prepare a written statement about the post and the underlying circumstances." Reed was on vacation at the time, and there is no indication that Richards merely "rubber stamped" any decision by him to fire Rodriquez. Rather, Reed's involvement was limited to calling

9

Rodriquez on July 27, 2010 to come into work, leading Rodriquez to Richard's office, and meeting with Rodriquez after Richards terminated her. As Rodriquez notes: "Once Reed and Rodriques's [sic] were in Richards's office, Richards informed Rodriques [sic] that her employment with Wal-Mart was being terminated for violating Wal-Mart's Social Media Policy. Reed did not say anything during the meeting." Because the evidence does not support Rodriquez's contention that Reed was either the individual with authority over her termination or somehow influenced Richards's decision, Reed's alleged discriminatory comments do not establish pretext.[1]

Appellant also argues that she did not violate the Social Media Policy and, therefore, Sam's Club fired her for a discriminatory reason. As the district court noted, Rodriquez admitted that a second violation of company policy would subject her to termination, and admitted to the facts that formed the basis of her Social Media Policy violation.[2] Sam's Club certainly could have concluded that Rodriquez's public comment violated its policies. *See Waggoner*, 987 F.2d. at 1165 (employer required only to demonstrate good-faith belief).

B.  Retaliation Claim

In addition to her discrimination claims, Rodriquez claims that Sam's Club terminated her in retaliation for filing internal complaints. In order to establish

---

[1] Even if he were the individual with authority over Rodriquez's termination, Reed's comments would fail to prove pretext because they were neither proximate in time nor related to her termination. Reed's comments disparaging African Americans do not involve Rodriquez's protected class. The one statement Rodriquez alleges Reed made disparaging Mexicans was directed at his own brother-in-law and is unrelated to Rodriquez's termination.

[2] Rodriquez argues that "[t]he District Court erred in concluding the underlying facts regarding the violation of the Social Medial Policy were not disputed." Her objection seems to center on her contentions that she (1) "would not have made the Facebook post had she known it was a violation," and (2) "that she did not think her post was a violation of the Social Media Policy and that she did not think she had done anything wrong." Neither contention contradicts the district court's finding that Rodriquez "admitted to the facts that form the basis of the Social Media Policy violation."

a prima facie case of retaliation, a plaintiff must prove that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a casual link exists between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). "Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.–Houston [14th dist.] 2007, pet. denied). An employee that files an internal complaint of discrimination engages in a protected activity. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001).

Rodriquez identifies as protected activities her use of Sam's Club's "Open Door Policy" in February 2003 "to make an internal complaint to Area Manager, John Bernheim regarding the way Jody Reed treated her" and her use of the policy again in October 2009 "to make an internal complaint about the gossip that [took] place at the work place regarding the Decision Day coaching Plaintiff received on or about October 8, 2009."

These internal complaints do not constitute a protected activity. In 2003, Reed reprimanded Rodriquez for her department's failure to remove expired goods from the shelf. Rodriquez then submitted a complaint that Reed "did not like her" and belittled her. After her AP Policy violation in 2009, Rodriquez complained that the employer breached her confidentiality when other associates discovered and discussed her Decision Day. Although Rodriquez is correct that "[o]pposition to discrimination . . . need not be in formal written form," her internal complaints are not protected activities because they did not reference discrimination or any other unlawful employment activity.

She also fails to establish the requisite causal link between her internal

complaints and her eventual termination. As the district court noted, "[t]he first alleged protected activity occurred in 2003, over seven years before Plaintiff's termination." We agree with the district court's determination that "[t]he long amount of time lapsing between the two events falls far short of the temporal proximity standard." With respect to the second alleged protected activity–her October 2009 complaint– Rodriquez likewise fails to establish a causal link to her termination. She argues that "the temporal proximity between these events by itself suffices to establish the prima facie case." Absent more of an explanation for how her October 2009 complaint caused her July 2010 termination, the nine-month gap between the two events negates any inference of a causal link. Rodriquez thus fails to establish a prima facie case for retaliation.[3]

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[3] Even if Rodriquez established a prima facie case of retaliation, her claim would ultimately fail for the same reasons as her discrimination claims. For the reasons discussed in § III.A, *supra*, Rodriquez would not be able to establish that Sam's Club's legitimate reason for her termination was merely pretext for retaliation.