**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 13-30373
Summary Calendar

**United States Court of Appeals
Fifth Circuit**

**F I L E D**

October 4, 2013

Lyle W. Cayce
Clerk

KENT RADER,

Plaintiff - Appellee

v.

MISTY COWART; PAT BOOK, Individually and in his official capacity as
Warden of Catahoula Corrections Center; LIEUTENANT  BOOK; LASALLE
MANAGEMENT COMPANY, L.L.C.; JAMES GLEN KELLY, individually
and in his official capacity as Sheriff of Catahoula Parish,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:09-cv-01872

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:*

On appeal is Kent Rader's suit alleging that he did not receive proper

medical care from October 2007 through December 2008 while incarcerated at

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Catahoula Correctional Center ("CCC") in Harrisonburg, Louisiana. Rader sued Warden Pat Book, Misty Cowart (a licensed practical nurse ("LPN") employed at the CCC), Sheriff James Glen Kelly, Lieutenant Book, and the CCC's private operator LaSalle Management Company, L.L.C. (collectively "defendants") for violations of various constitutional rights under 42 U.S.C. § 1983 and Louisiana law. On February 1, 2013, the district court adopted a magistrate judge's report and recommendation and denied defendants' motion for summary judgment. We affirm.

## I.  FACTS AND PROCEEDINGS

Rader was incarcerated at CCC from February 6, 2007 to May 28, 2009. He alleges that during his incarceration defendants denied him medical care for ocular histoplasmosis. According to defendants' motion for summary judgment, Rader wrote a medical request in October 2007 seeking care and treatment for the loss of sight in his left eye. He also reported his eyesight loss to, among others, Cowart. After continued complaints about his eyesight, Rader was brought to Cowart in early 2008. After two visits to Huey P. Long Hospital-England Airpark in January 2008, Rader was referred to LSU Medical Center-Shreveport for additional treatment.

It was not until October 22, 2008, however, that Rader had his first visit to the LSU Medical Center in Shreveport. According to defendants, immediately after this visit "he knew that he had Histoplasmosis and . . . that, had he received treatment sooner, the outcome could have been different."

Rader filed his complaint on October 30, 2009, contending that Cowart and LaSalle Management were deliberately indifferent to his serious medical needs, leading to permanently lost vision. Defendants filed a motion to dismiss on February 16, 2010, which was referred to a magistrate judge. On July 9, 2010,

2

a Report and Recommendation recommended that the motion be denied. The district court denied the motion to dismiss on July 23, 2010. After the district court's denial of the motion to dismiss and the completion of discovery, defendants moved for summary judgment. Defendants' motion only argued prescription, an argument the district judge addressed in the previous motion to dismiss.

On December 11, 2012, in his report and recommendation, the magistrate judge stated that in the district court's

> ruling on defendants' motion to dismiss, the district judge held that Rader's cause of action based on injury to his vision accrued no later than December 31, 2008, and therefore his action, filed on October 30, 2009, was filed timely. The defendants are re-urging in their motion for summary judgment an issue the district court has already ruled on.

In its report, the magistrate recommended that defendants' motion for summary judgment on the issue of prescription should be denied. The magistrate made this recommendation without addressing the merits of defendants' prescription argument, their proffered evidence resulting from discovery, or plaintiff's evidence and argument in opposition. Instead, the magistrate applied "collateral estoppel, or issue preclusion." According to the report:

> In the case at bar, the issue of prescription was raised in defendants' motion to dismiss, litigated, and ruled on by the district court in a final, appealable judgment. Since this issue has already been considered and ruled on in this court, this motion should be denied as repetitive and, pursuant to the principle of issue preclusion, should not be reconsidered in this court.

In February 2013, the district court denied defendants' motion "[f]or the reasons contained in the Report and Recommendation of the Magistrate Judge previously filed herein, and after independent (de novo) review of the record including the objections filed herein." On March 1, 2013, defendants filed a

Motion to Certify Judgment for Appeal, seeking permission from the district court for appellate review. The district court granted the motion, and this court granted defendants permission to seek appellate review of the denial of the motion for summary judgment. *See* 28 U.S.C. § 1292.

## II. STANDARD OF REVIEW

We review the grant of summary judgment de novo, applying the same standards as the district court. *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013). "Even if we do not agree with the reasons given by the district to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus of Louisiana, Inc.*, 418 F.3d 436 (5th Cir. 2005). Summary judgment is appropriate when the evidence indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anadarko Petroleum Corp. v. Williams Alaska Petroleum, Inc.,* No. 12-20716, 2013 WL 4001507, at \*2 (5th Cir. Aug. 6, 2013); FED. R. CIV. P. 56(a). "We review *de novo* [a] district court's ruling on prescription." *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000).

## III. DISCUSSION

Defendants appeal the district court's application of issue preclusion and resulting denial of their prescription-based motion for summary judgment.

A. Issue Preclusion

Defendants argue that the district court's adoption of the legal reasoning contained in the magistrate's report and recommendation regarding issue preclusion was error. We agree. Although the magistrate's report correctly described issue preclusion, it incorrectly applied the doctrine by finding that it

barred defendants' motion for summary judgment.

"[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Issue preclusion only applies, however, when "the facts and the legal standard used to assess them are the same in both proceedings." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (internal marks omitted); *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999).

The standard applied to a motion to dismiss under Rule 12(b)(6) differs significantly from that applied to a motion for summary judgment. As this court previously described the distinction:

> We review both a motion to dismiss and a motion for summary judgment under a de novo standard of review. In the former, the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. In the latter, we go beyond the pleadings to determine whether there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000) (citations omitted). Whereas a motion to dismiss challenges a complaint's legal sufficiency, a post-discovery motion for summary judgment evaluates whether a genuine issue of material fact remains after considering both sides' proffered evidence.

The district court's judgment on the motion to dismiss did not find facts; it found only that Rader's allegations were sufficient to defeat the motion to dismiss. The lower court thus erred in applying issue preclusion to defendants' motion for summary judgment on prescription based on its prior ruling in the motion to dismiss.

B. Prescription

Because 42 U.S.C. § 1983 has no statute of limitations, the prescriptive period is based on state law. Louisiana has a one year prescriptive period for all personal injury claims, including civil rights claims. *Cruz v. Lousiana ex rel. Dep't of Pub. Safety and Corr.*, 528 F.3d 375, 378-79 (5th Cir. 2008). Although federal courts apply state prescriptive periods, they look to federal law to determine when a civil rights action accrues. *Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999); *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). "A cause of action accrues, under federal law, when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589-90 (5th Cir. 1999) (internal marks omitted). "A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

Without applying issue preclusion, we find that the record supports the district court's denial of the motion for summary judgment. In relevant part, the district court's February 2010 order denying defendants motion to dismiss held:

> Plaintiff's complaint clearly asserts that he was informed, during a visit to Doctors Taba and Mindeola in November or December of 2008, for the first time that his vision was impaired by a condition known as ocular histoplasmosis which would have been curable if treated timely. Plaintiff asserts that he was informed during this visit that, as a result of the delay in treatment, his vision loss was permanent and irreversible. While plaintiff requested medical attention for his vision problems as early as 2007, the record before the court supports a finding that plaintiff was apprised of his diagnosis and of the effect of delayed treatment much later. Defendants offer no evidence that plaintiff was aware of his diagnosis at any point prior to November or December of 2008. Were plaintiff able to diagnose and treat his own medical condition, any alleged deprivation by defendants would be moot. We do not impose that burden on plaintiff in these proceedings. . . . Accordingly, we find that plaintiff's cause of action

based on injury to his vision accrued no later than December 31, 2008. Plaintiff's suit, filed on October 30, 2009, is timely.

We accept the district court's framework, and evaluate whether defendants introduced enough evidence that no genuine issue of material fact remains as to whether Rader was aware of his alleged injury prior to October 30, 2008.

Defendants direct this court's attention to Rader's deposition, hospital records from January 2008 stating that Rader had "likely POHS [presumed ocular histoplasmosis syndrome]," the deposition of Rader's current treating physician and eye specialist (Dr. John T. Couvillion), and a sick call request form Rader submitted to CCC on October 20, 2008.

Rader contests defendants characterization of his deposition testimony and the medical records of his October 22, 2008 diagnosis of ocular histoplasmosis. According to him, his testimony that "they told me I do have Histo. They were going to have to start your injections" at most acknowledged that on October 22, 2008 he was given a "possible" or "tentative" diagnosis of "presumed" ocular histoplasmosis. Further, "[a] final diagnosis of Ocular Histoplasmosis Syndrome was not (and truly could not be) reached until after Mr. Rader's fluourescein angiography on October 30, 2008." Rader also puts forward the testimony of Corporal Eric Stott, Misty Cowart, and Dr. Couvillion in support of his contention that his awareness of his injury occurred on October 30, 2008.

Based on the evidence presented in parties' motion for summary judgment, we agree with Rader that a reasonable juror could find that he "did not know until the date his POHS diagnosis was finally confirmed (on or after October 30, 2008) that the vision problems he was experiencing were irreversible." Moreoever, "he certainly could not have known that these defendants' . . . failure to transport him for medical care would lead to the permanent, untreatable corneal scarring he will suffer for the remainder of his life." Although Rader

experienced symptoms more than a year prior to filing his lawsuit, the prescriptive period runs at the point when Rader was aware that his loss of vision was connected to defendants' alleged mistreatment. A genuine issue of material fact persists as to when this occurred, rendering summary judgment inappropriate.[1]

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[1]Defendants argue that several unpublished district court opinions–*Jackson v. E.A. Conway Med. Ctr.*, No. 07-1966, 2009 WL 159732 (W.D. La. Jan. 22, 2009); *Jackson v. E.A. Conway Med. Ctr.*, No. 07-1966, 2009 WL 2512846 (W.D. La. Aug. 17, 2009); and *Harrell v. Edwards*, No. 05-4002, 2007 WL 734387 (E.D. La. Mar. 6, 2007)–represent a "proper application of the law on inmate medical claims." Even assuming they do represent a proper application of prescription in those cases, we find their facts distinct from Rader's. In *Jackson*, the court was satisfied that a plaintiff's heart attack, together with prescriptions and orders from his doctor, "put him on notice that he was suffering an injury" when the warden intentionally denied or delayed his access to medical care and interfered with his prescribed treatment. *Jackson*, 2009 WL 159732, at *2. In *Harrell*, the court found prescription to run from the moment he requested and was denied medical attention after falling in the shower and "sustain[ing] pain in his right shoulder, right hand, and right foot." *Harrell*, 2007 WL 734387. In contrast, Rader's condition remained undiagnosed well after he began experiencing symptoms. While we agree with defendants that a final medical diagnosis is not required in all cases for prescription to run, Rader could not have known that defendants' alleged delay or denial of treatment would lead to permanent loss of eyesight without first learning that he suffered from ocular histoplasmosis.